# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**RODNEY DAVISON,**

    **Plaintiff**,

vs.

**C/O MACLEAN, C/O FRANTZ,**
**C/O HERBERT, SERGEANT D. WILLIAMS,**
**DEPUTY CARBERRY, DEPUTY SCOTT AND**
**WARDEN WOLFENBARGER**,

    **Defendants**.
_____/

**CIVIL ACTION NO. 06-12755**

**HONORABLE AVERN COHN**
**HONORABLE STEVEN D. PEPE**

## REPORT AND RECOMMENDATION REGARDING DKT. #17, #24 AND #29

Rodney Davison is a prisoner in the custody of the Michigan Department of Corrections (MDOC). On June 22, 2006, he filed this action under 42 U.S.C. §1983 against several defendants in their official and individual capacities. Plaintiff alleges that Defendants have retaliated against him due to his religious status in violation of his First and Fourteenth Amendment rights. All pretrial matters were referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(A) and (B). Defendants filed their motion to dismiss for lack of exhaustion. This is a case where unfortunately Plaintiff's claim fails because Plaintiff did not clear all of the restrictive procedural hurdles imposed on him by 42 U.S.C. § 1997e of the Prison Litigation Reform Act ("PLRA"). For the reasons stated below, it is RECOMMENDED that Defendants' motion be GRANTED (Dkt. #17), Plaintiff's motion for summary judgment be DENIED (Dkt. #29)[1]

---

[1] Docket No. 24 is a duplicate, though incomplete, of Docket No. 29 and it is therefore recommended that it be dismissed as moot.

and Plaintiff's complaint be DISMISSED for failure to exhaust his administrative remedies pursuant to 42 U.S.C. §1997e.

**I.     BACKGROUND FACTS**

Analyzing the facts in the light most favorable to Plaintiff, they are as follows:

December 12, 2003 - In response to Plaintiff's request to temporarily leave his assignment as visiting room porter to break his religious fast, Defendant Maclean states to Plaintiff, "So you're one of them Muslims, huh?" Defendant Frantz says, "I'll bet he's one of those Farrakhan following Muslims who hate white people. If I had known that I would never hired him to work in the visiting area. We'll have to do something about a white man hating Muslim working up here with us." Plaintiff was searched in a secluded room prior to returning to his housing unit and Defendant Maclean made other derogatory comments, including, "Aren't Muslims ashamed to show their naked bodies to white people?"

December 13, 2003 - December 28, 2003 – Plaintiff "suffered similar harassment [ ] throughout" this period of time.[2]

January 30, 2004 – Plaintiff alleges to have overheard a conversation between Defendant Williams and Defendant Maclean in which Defendant Williams said "You know what we have to do," and Defendant Maclean responded "I'm going to give him the rules, so it doesn't look suspi[cious]." (Dkt. #29-1, p. 21). Defendant Maclean then issued a major misconduct ticket against Plaintiff for theft (the "First Misconduct Ticket"), on which Defendant Frantz served as a witness. Sergeant Williams was the supervising officer of Defendants Maclean and Frantz at this time.

---

[2] Plaintiff does not elaborate on the details of the alleged harassment.

2

<u>February 5, 2004</u> – Defendant Frantz issued a major misconduct ticket against Plaintiff for being out of place (the "Second Misconduct Ticket").

<u>February 13, 2004</u> – Plaintiff was found not guilty on the First Misconduct Ticket.

<u>February 15, 2004</u> – Plaintiff alleges he attempted to return to his duties as a visiting room porter but Defendant Williams had him removed and drafted a Work Assignment Evaluation permanently reassigning Plaintiff.

<u>February 19, 2004</u> – Plaintiff filed a grievance, Grievance No. MRF-04-02-00214-0172 (Grievance No. 214) (Dkt. #1, p. 22), in which he complained to MDOC officials that he had been "layed-in" pending the outcome of the First Misconduct Ticket, had returned to work following the resolution of the ticket and that "Lt. Turner" had him removed from his position and stated " 'We don't care if you beat the ticket. We don't want you up [here].' " (*Id.*).

<u>February 27, 2004</u> – Plaintiff was found not guilty of the Second Misconduct Ticket.

<u>April 18, 2004</u> – Defendant Herbert issued a major misconduct ticket against Plaintiff for sexual misconduct during a visit (the "Third Major Misconduct Ticket") and issued a visiting restriction. Defendant Williams served as a witness on this ticket.

<u>April 29, 2004</u> – Plaintiff was found not guilty of the Third Major Misconduct Ticket, after an investigation which included the viewing of a videotape of the visit.

<u>May 5, 2004</u> – Plaintiff filed Grievance No. MRF-04-05-00549-0172 (Grievance No. 549), in which he alleges that the First, Second and Third Major Misconduct Tickets were all falsified and that the Second and Third were written as part of a conspiracy in retaliation for Plaintiff's successful challenge of the First (Dkt. #1, p. 25).

<u>February 3, 2005</u> – Plaintiff filed Case No. 05-70287, in which he alleged the same facts

as in the present matter.

  May 2, 2005 – This Court dismissed Case No. 05-70287 under the total exhaustion rule.

  December 24, 2005 – Plaintiff filed Grievance No. MRF-06-01-00040-028E (Grievance No. 040) (Dkt. #1, p. 15), in which he alleges that all the Defendants have discriminated against him based on his religion; beginning with the verbal remarks on December 12, 2003; continuing with the false issuance of the First, Second and Third Major Misconduct Tickets; and further documented by the supervisors refusal to follow-up on his complaints about this treatment despite Plaintiff's requests for assistance (Dkt. #1, pp. 15-18).

**II.**  **ANALYSIS**

  Plaintiff filed a complaint on February 3, 2005, in which he set forth the same chronology of events as in this matter, Case No. 05-70287. That case was dismissed for failure to exhaust under the Sixth Circuit's total exhaustion rule set forth in the recently overruled *Jones-Bey v. Johnson,* 407 F.3d 801, 805 (6th Cir. 2005) (Case No. 05-70287, Dkt. #45 & #47). The court found that, in his grievances, Plaintiff had failed to specifically name defendant Carberry and had failed to allege any facts to support religious retaliation. Therefore, based on then-current Sixth Circuit exhaustion rules, the claims against defendant Carberry and the claims of retaliation based on religion had not been exhausted and the entire complaint had to be dismissed (*Id.*, citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) and *Jones-Bey v. Johnson, supra*). Plaintiff then filed Grievance No. 040 on December 24, 2005, setting forth all the facts supporting his claim of retaliation based on religion and naming all the defendants.

  In *Jones v. Bock*, – S.Ct. –, 2007 WL 135890 (2007), the Supreme Court overturned the

4

Sixth Circuit's total exhaustion rule and its requirement that prisoner's specifically plead exhaustion in their complaints. Yet the PLRA's exhaustion requirement remains in effect and requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. 42 U.S.C. §1997e(a), *see Booth v. Churner* 532 U.S. 731, 731 (2001).

The *Jones v. Bock* Court held that it is the state correction system's procedures which determine what requirements must be met in order for a grievance to be deemed procedurally proper. The actions about which Plaintiff complains in this case took place on or around December 12, 2003, through April 29, 2004. The current MDOC policy directive regarding filing grievances was in effect at that time and states the following about what information prisoners must include in their grievances:

> T. . . . . The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC P.D. 03.02.130 (T.).

The MDOC policy does not contain a precise description of the necessary degree of factual particularity required of prisoners. The Sixth Circuit has held that prisoners, in their grievances, are not required to

> allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint. *Cf. Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002) (holding that when state grievance rules do not prescribe the contents of a grievance or the necessary degree of factual particularity, a grievant need only "object intelligibly to some asserted shortcoming" and need not "lay out facts, articulate legal theories, or demand particular relief").

*Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds by Jones v.*

*Bock*, *supra*.

Defendants argue that Plaintiff's timely grievances, Grievance No. 549 and Grievance No. 214, never brought to MDOC's attention the actions Plaintiff now alleges took place with regard to his religious retaliation claims. In fact, in Grievance No. 214, filed February 19, 2004, Plaintiff takes issue with the fact that his porter job was not restored upon the dismissal of a major misconduct ticket issued against him, but he does not mention the facts that support the current cause of action, i.e. that he was subjected to derogatory remarks about his religion on December 12, 2003, and that the major misconduct ticket, issued on January 30, 2004, was fabricated by those that made the derogatory remarks because of Plaintiff's religion (Dkt. #1, p. 22). And, while Grievance No. 549, filed May 5, 2004, does allege that three misconduct tickets issued against Plaintiff were false and retaliatory, Plaintiff again failed to include the facts that support this current cause of action. Instead, Plaintiff alleged that those involved were retaliating against him because he successfully disputed the first major misconduct ticket at issue involving his First and Fourteenth Amendment rights to resist and defend against false misconduct charges and not his First and Fourteenth Amendment right to equal protection and freedom from discrimination due to his religion – an allegation that is not raised in the present litigation. While rejecting the notion that grievances are designed to give *individuals* notice of possible litigation against them, in *Jones v. Bock* the Supreme Court maintained that the "benefits of exhaustion [] include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record. See *id.,* at ----, 126 S.Ct. 2378 (slip op., at 6-8); *Porter,* 534 U.S., at 524-525, 122

6

S.Ct. 983. . . . early notice to those who might later be sued, . . . has not been thought to be one of the leading purposes of the exhaustion requirement. *See Johnson,* 385 F.3d, at 522 ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation"), . . . . " *Jones v. Bock*, *supra* at *12.

In certain cases, insisting that a claimant state the exact nature of the retaliation or other wrongful act – the "why" requirement of MDOC P.D. 03.02.130 (T.) – is an unreasonable burden. In cases where a respondent has camouflaged his motives, a grievance should not later be found deficient for exhaustion purposes because the inmate could not read the mind of the corrections officer accused. In those cases where the motivation is not apparent, it should be sufficient that the claimant alleged in the grievance the mistreatment (the writing of knowingly false misconduct tickets) that later forms part of the basis for a §1983 complaint. For instance, a prisoner may receive a number of allegedly false and actually unsuccessful misconduct tickets as in the present case and raise the issue in a proper grievance but fail to identify the motive in the grievance – personal dislike of the inmate, religious discrimination, prior inmate litigation or grievances, successful defense of prior misconduct ticket(s) –  because such is unknown to the inmate at the time.

If he later discovers that there was an unconstitutional motivation for writing the tickets his §1983 claim should not be dismissed for failure to exhaust due to his failure to identify the actor's motive when is could not earlier be known. As stated above, the *Burton* Court held that a prisoner's grievance need not allege a specific legal theory or facts that correspond to *all* the required elements of a particular legal theory. *Burton, supra,* 321 F.3d at 575. Yet, a prisoner's

Step I problem statement must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.* Any concept of "fair notice" would require inclusion of known and obviously material facts such as the respondent correction officer's stated bias against the inmate's religion.

In this case Plaintiff failed to include in his grievance the facts regarding the Defendants' malice toward his religion – facts about which he concedes he at all times had first-hand knowledge and facts which are material to his current complaint. In response to Defendants' motion to dismiss Plaintiff states that Defendants' December 12, 2003, derogatory comments were "coupled with being threatened with retaliation" and that he immediately informed the warden and two deputies about the problem (Dkt. #29, p. 6-7). He just did not file a grievance because he thought they would resolve the problem.

Plaintiff's failure to file a grievance containing the facts set forth in the complaint in this matter and thereby notify MDOC that he had been subjected to derogatory remarks regarding his religion and/or that he believed he was being issued false misconduct tickets in connection with his being Muslim, denied MDOC the opportunity to address his complaints through its grievance or prepare a useful record for use in this court. Far from being required to assert a specific legal theory, or allege facts that correspond to *all* elements of his cause of actions, or guess the motivation of the defendants, Plaintiff was simply required to inform MDOC of the known, material facts that made up his grievance. He failed to do this. Therefore, as held in Case No. 05-70287, Plaintiff has failed to exhaust his administrative remedies with regard to his religious retaliation claims of which he was aware at all relevant times, and accordingly 42 U.S.C. §

8

1997e directs that these claims be dismissed.

While Plaintiff's February 2004 and May 2004 grievances did not raise the religious discrimination and retaliation claim that is involved in this litigation, his December 24, 2005, grievance did (Grievance No. 040). Yet, Plaintiff's argument that he eventually exhausted his administrative remedies by filing Grievance No. 040 fails for other procedural reasons. In *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), the Supreme Court clarified that a prisoner cannot allow administrative filing deadlines to pass and then proceed to federal court arguing that no administrative remedies are available to him, but must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. While Grievance No. 040 was filed before the filing of this law suit, the Supreme Court made it clear that the PLRA's exhaustion requirement requires *proper* exhaustion. *Woodford v. Ngo*, *supra*, at 2387.

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Id.* at 2386.

MDOC policy requires filing a Step I grievance within five days of attempting to resolve the issue. MDOC P.D. 03.02.130 (X.). While the last grievance at issue, Grievance No. 040, did contain all of the allegations supporting the claims at issue in this matter, it was not filed within the MDOC time limitation applicable at the time. Plaintiff Grievance No. 040, raises actions alleged to have taken place "12-12-03 thru 5-5-04" but was filed on December 24, 2005. This is more than a year and a half after the last challenged action is alleged to have taken place and two years after the blatantly derogatory remarks of certain of the Defendants that are alleged to have

been made to Plaintiff.

As the *Woodford* Court pointed out " '[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice.*' " *Woodford v. Ngo*, *supra*, at 2385-2386 (citations omitted). Plaintiff did not timely object to the alleged retaliatory treatment based on his religion and under MDOC's rules he has not and no longer can properly exhaust his administrative remedies with respect to these claims. Therefore, 42 U.S.C. §1997e requires that Plaintiff's claims of retaliation due to exercise of religion be dismissed with prejudice.[3]

### III.  RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that Defendants' motion be GRANTED (Dkt. #17), Plaintiff's motion for summary judgment be DENIED (Dkt. #24 & #29) and Plaintiff's complaint be DISMISSED for failure to exhaust his administrative remedies pursuant to 42 U.S.C §1997e.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy

---

[3] It is noted that in Plaintiff's responsive documents he provides stray arguments that at once allege that he was not aware that the retaliatory conduct at issue was based on religious animus and that he attempted to report religious discrimination but was warned against doing so. These arguments were not addressed due to (a.) their wholly contradictory nature, (b.) the fact that Plaintiff does not explain how he was only later informed/convinced that the defendants' actions were committed in retaliation for his exercise of religion when, in fact, the only actions by the defendants that can easily be attributed to religious animus are the comments that were made at the beginning of this case's chronology and (c.) Plaintiff has, at most, alleged that he was assured that the issue would be resolved outside the grievance system through a departmental investigation, but the PLRA does not provide any excuse for failing to exhaust administrative remedies.

hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: March 30, 2007                                                                          s/Steven D. Pepe
Flint, Michigan                                                                                United States Magistrate Judge

Certificate of Service

    I hereby certify on <u>March 30, 2007</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Diane M. Smith, Esq.</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:<u> Rodney Davison, #213112, Kinross Correctional Facility, 18770 E. Watertower, Kincheloe, MI 49755</u>

                                                                                                                  s/Tammy Hallwood  
                                                                                                                  Deputy Clerk  
                                                                                                                  U.S. District Court  
                                                                                                                  600 Church St.  
                                                                                                                  Flint, MI 48502  
                                                                                                                  810-341-7850